

THE ATTORNEY GENERAL
OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable T. M. Timble
First Assistant State Superintendent
Austin, Texas

Dear Sir:

Opinion No. O-1266
Re: Refunding of school taxes
paid to a school district
on property, which is lo-
cated outside of said
school district.

We are in receipt of your letter of August 10, 1939, in which you request the opinion of this department on the following question:

"A tax payer who has property ad-jacent to a school district has been paying taxes for school purposes to this adjacent district for the last several years, believing that her property was in this district. Now it develops that the property is not in this district, but in an adjoining district which has no school tax. Can we lawfully refund her taxes paid to us, and, if so, what is the procuedure?"

It is a general principle of law that taxes which are voluntarily paid are not thereafter recoverable. Arrott vs. Allegheny County, 194 At. 910 (Supreme Court of Pennsylvania): Burley vs. Lindheimer County, 11 N. E. (2d) 926 N. W. 851 (Supreme Court of Nebraska); Atkins Guardian vs. McCoy, 120 S. W. (2d) 1019 (Court of Appeals of Kentucky). These cases make no distinction between a payment under a mistake of law, or a payment under a mistake of fact by the taxpayer.

In the case at hand, we have a situation where a legal tax was paid by a taxpayer under a mistake of fact.

The taxpayer believed her property to be in the taxing district where it was assessed by the tax assessor for that district. There is a conflict of authority throughout the United States as to whether or not such a payment under a mistake of fact is a voluntary payment. Several cases have held the payment of school taxes on property not located within the taxing district to be voluntary, and, therefore, not recoverable by the taxpayer. Wilson vs. Board of Commissioners of Allen County, et al., 162 Pac. 1158 (Supreme Court of Kansas); Edwards vs. Board of Commissioners of Oklahoma County, et al., 36 Pac. (2d) 6 (Supreme Court of Oklahona); Walser, et al. vs. Board of Education of School District No. 1, 42 N. E. 346 (Supreme Court of Illinois).

The better view seems to be, however, that the payment of taxes on property outside of a taxing district, under a mistake of fact, is not a voluntary payment, and are recoverable by the taxpayer.

"It is a well settled general rule that, if a wrongful or illegal tax is paid by the person assessed voluntarily and without compulsion, it cannot be recovered back in an action at law, or by way of set-off, unless there is some constitutional or statutory provision expressly or impliedly giving him such rights, although the tax is paid without compulsion, and this rule has been applied, even though payment was made under protest. But the rule does not apply to a tax paid on land wholly outside the taxing jurisdiction of the county levying the same." 61 C. J. 985.

"In many instances it seems that the mistake as to the correct tax district is, for practical purposes at least, one of fact; as where there is no uncertainty as to the location of legal boundaries, or as to the legal authority of the district in question, or the general regularity of the tax proceeding, but merely from factual forgetfulness or inadvertence in the listing of the property for taxation. In such cases the better view seems to be that there may be recovery if, under the circumstances, a denial of recovery would be unjust." 95 A.L.R. 1224.

A number of cases in other jurisdictions have allowed a recovery of taxes paid on property not within the taxing district even though the taxes were paid willingly by the taxpayer who believed his property to be within the taxing district. Churchill vs. Board of Trustees of Highland Park Graded School, 89 S. W. 122 (Court of Appeals of Kentucky); City of Indianapolis vs. Patterson, 14 N. E. 551 (Supreme Court of Indiana); Miller vs. City of Oneida, 272 N. Y. Supp. (Supreme Court of New York); In re: Wing, 295 N. Y. Supp. 336; Bridgeport Hydraulic Co. vs. City of Bridgeport, 130 At. 164 (Supreme Court of Error of Connecticut); Pederson vs. Stanley County, 149 N. W. 422 (Supreme Court of South Dakota).

The Supreme Court of Texas, in the case of the County of Galveston vs. J. C. Gorham, 49 Tex. 279, first recognized that there was a distinction between an illegal tax paid under a mistake of law and a legal tax paid by the taxpayer under a mistake of fact. In answering the question of whether or not a taxpayer had the right to recover taxes paid illegally under a mistake of law, the court said:

> "We are of opinion that they have not, because in such case it is voluntarily paid, and it, under the circumstances, is not contrary to good conscience for the county to retain it. It was voluntary, because it was without objection paid under a mistake of law, if it was illegal, and there was no mistake of fact in paying it, and no deceit, fraud, or compulsion used in collecting it, or in causing it to be paid, on the part of the county or of any of its officers, that prevented the will of the parties paying it from being freely exsecised in doing the act."

The court further said:

> "When money is paid under a mutual mistake of law, the mistake of law, in and of itself, is no ground for recovering it back."

> "A mistake of fact on the part of one who pays, and deceit or fraud and compulsion on the part of one who re-

Honorable T. M. Trimble, page 4 O-1266

ceives, under which money is paid, are
each and all legally recognized as facts
sufficient in and of themselves to per-
vert the will of the party doing the act,
so that it could be said and held, that
the will did not concur with the act done,
thereby relieving him from the responsi-
bility for and the consequences of the
act. These are such facts as it is prac-
ticable to judicially investigate, and
there is no great public policy in fore-
stalling their investigation, when they
exist in a degree well defined, and prac-
tically capable of exerting a controlling
influence upon the acts of the party who
has paid the money, as it may then be said,
against his will, or at least in the ab-
sence of its free exercise."

The same facts as outlined in your letter con-
fronted the Beaumont Court of Civil Appeals in the case of
Frost vs. Fowlerton Consolidated School District No. 1, et
al., 111 S. W. (2d) 754. In this case, a man named Master-
son paid school taxes to Fowlerton Consolidated School Dis-
trict No. 1. from the years 1911 to 1926, inclusive. He paid
the taxes in good faith, and the School District accepted
them in good faith. When it was discovered that Master-
son's property was not within the limits of the School Dis-
trict, the trustees of the District, in an effort to refund
him his taxes, excuted and delivered to him a warrant for
the same, which was in issue in the case. The court said:

"The payment of the taxes by Mas-
terson, through a mutual mistake, on
property not within the School District,
was not a 'voluntary payment' within the
rule denying recovery for taxes paid vol-
untarily and without compulsion. The
general rule is thus well stated by 61
C. J. 985."

The court then quotes the section from Corpus
Juris which has been previously quoted in this opinion.
The court then quotes from the case of Pederson vs. Stan-
ley County (previously cited) as follows:

"It is the contention of appel-
lant that under the general rule that
taxes voluntarily paid cannot be re-

covered the respondent was not entitled
to recover a judgment for the said
amounts so paid to Stanley County. We
are of the view that the said rule has
no application to the facts of this case.
The property of respondent was wholly
outside of the taxing jurisdiction or
taxing district of Stanley County, and
was therefore not taxable at all in that
county, and the amounts so paid by re-
spondent to said Stanley county were in
fact not a tax at all. Stanley county
was wholly without jurisdiction or au-
thority to levy and collect such sums as
a tax against the property of respond-
ent."

The court, in the same case, stated further;

"The fact that the taxes paid by
Masteron - the very money paid by him
- had been expended by appellee and was
not in his possession when the warrant
was issued, did not take from the trus-
tees the power to issue the warrant."

As to the manner of payment of this warrant, the
court states as follows:

". . .possible appellee could not
have paid the warrant from the state and
county funds, but appellee had other funds
derived from local taxes, tuition fees,
etc. The expenditure of these funds falls
within the provisions of Section 2 of Ar-
ticle 2827, which provides: 'Local school
funds from district taxes, tuition fees of
pupils not entitled to free tuition and
other local sources may be used for the
purposes enumerated for State and county
funds, and for purchasing appliances and
supplies for the payment of insurance pre-
miums, janitors, and other employees, for
buying school sites, buying, building and
repairing school houses, and for other
purposes necessary in the conduct of the
public schools to be determined by the
Board of Trustees, the accounts and
vouchers for county district to be ap-

proved by the county superintendent; provided, that when the State Available School Fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein."

It is the opinion of this department, therefore, that the trustees of this school district may refund the money collected from this taxpayer by issuing her a warrant drawn on the local maintenance fund collected from local taxes, tuition fees, etc. The money may not be paid from the State and county funds furnished the school district. In this respect, however, your attention is called to the case of Pfluger, et al vs. Hutto Independent School District, 34 S.W. (2d) 632 (Court of Appeals of Austin), where a plea of limitations was sustained by the Court in a case where taxes had been paid to a school district on property not located within said school district. The court held that the facts in that particular case were such as to arouse the suspicion of the taxpayer so as to start the running of the two year statute of limitations, by which the taxpayer was barred in that case.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          Billy Goldberg
                    Assistant

BG:FG

APPROVED SEPTEMBER 5, 1939
GERALD C. MANN
ATTORNEY GENERAL OF T EXAS

APPROVED OPINION COMMITTEE
BY BWB, CHAIRMAN